IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| | ) Criminal No. 2:12-cr-00228 |
| v. | ) |
| | ) Judge Mark R. Hornak |
| ERNESTO IVAN LAZO-RODRIGUEZ, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

The Defendant, Ernesto Ivan Lazo-Rodriguez, was indicted on August 22, 2012 on three (3) counts stemming from his efforts to reenter the United States and to be naturalized as a citizen. ECF No. 1. Of relevance here is Count 3 of the Indictment, charging him with violating 8 U.S.C. § 1326, which makes it unlawful for an alien who has once been deported to unlawfully reenter the United States, or "to be found" in the United States, unless permission to do so has been granted by the appropriate federal authorities.

The Defendant moves to dismiss Count 3 of the Indictment on statute of limitations grounds, contending that the Indictment was delivered, and this prosecution was commenced, more than five (5) years after he so reentered the United States and more than (5) five years after he was or could have been found in this country by federal immigration authorities, if they had exercised reasonable diligence to so find him. For the reasons which follow, the Motion to Dismiss Count 3 of the Indictment, ECF No. 17, is denied.

The Government and the Defendant do not contest the essential operative facts relevant to the disposition of this Motion. The Defendant was authorized to be in this country from his native El Salvador as of December 2, 1993 as a permanent resident and under the name Ernesto

1

Ivan Lazo-Rodriguez. On July 24, 1997, he was ordered deported from the United States as a result of his conviction by state authorities in Texas for aggravated robbery, and was removed to Mexico in June, 2000, after serving his Texas prison term. In 1997, his photograph and a full set of his fingerprints were taken by Texas authorities. ECF No. 17 at ¶ 5. The twist is that when the Defendant was so convicted and deported to Mexico (because he claimed to be of Mexican origin), he used the alias "Daniel Mancero". ECF No. 17 at ¶ 3. Thus, for all that the Texas and United States officials knew at the time, he was ejected from the United States as "Daniel Mancero." The record also reveals that those Texas-procured records came into the possession of federal immigration authorities in January 1997. ECF No. 17 at ¶ 6. On May 20, 1997, federal immigration officials procured the print of Defendant's right index finger. ECF No. 17 at ¶ 7.

Sometime thereafter, Defendant returned to the United States, perhaps using the permanent resident credentials ("green card") that had been issued to him as Mr. Lazo-Rodriguez. The Government claims that it has no record of his reentry to the United States under either name. ECF No. 21 at 3. On January 13, 2004, he applied for the renewal of that green card, using among other things, Form I-90, and on January 16, 2004, he provided his photograph, a set of fingerprints, and "biometric" information to federal immigration officials. ECF No. 17 at ¶ 11. He did not provide the name "Daniel Mancero." Then, on April 12, 2012, Defendant applied to be naturalized as a United States citizen as Ernesto Ivan Lazo-Rodriguez.[1] The record also demonstrates that at no time at or after his return to the United States (apparently using the green card issued to him in his true name) did Defendant affirmatively advise any federal immigration official that he had been deported under another name, or that he had ever used another name. Defendant's activities were discovered in April, 2012 when, in connection with

---

[1] Defendant denied ever being convicted of a crime, being jailed, using another name, or being deported on his Naturalization Form N-400. ECF No. 21 at 4.

2

his efforts to be naturalized, fingerprints he supplied in support of that application were "matched" with the Mancero prints. ECF No. 17 at ¶ 14.[2]

The Defendant's argument is rather straightforward. He was not indicted until August 22, 2012. Well more than five (5) years before that date, he had not only reentered the United States, but he contends that (1) federal authorities actually "knew" he was here because at least as of 2004, they had "his" photo and fingerprints,[3] or (2) they should be charged with "constructive knowledge" that he was present in this country because if they had elected to cross-reference the photo and fingerprints the Defendant had provided in 2004 with their records obtained when he was deported under another name in 1997, they would have known full well that he had reentered, and could be "found in" the United States.[4] According to the Defendant, any definition of "reasonable diligence" includes at least doing that, and therefore, the United States should be charged with the knowledge of his presence, given that it would not have been very difficult to figure out that he had in fact returned no matter what name he was deported under or what name he returned with. Thus, according to the Defendant, under either test this prosecution is barred by the statute of limitations, and Count 3 of the Indictment should be dismissed.

The Defendant attempts to buttress the logic of his argument with evidence adduced at a motion hearing held in open court, at which time the Government called as a witness Carolyn Davis Vernon, a federal immigration official who testified that at the time of Defendant's green

---

[2] According to the Government, the fingerprint matching process was put in place in 2005.

[3] The logic of this argument, ECF No. 24 at 3, escapes the Court. While it may be true that in 2004 (when he went to renew his green card), the immigration officials knew Defendant was present in the United States as himself, there is no record evidence that they *actually* knew he was also Daniel Mancero, or that they *actually* knew that Defendant *qua* Defendant had been previously deported. The most that Defendant says on this point is that the immigration officials "may well have had actual knowledge of [Defendant's] illegal presence in the United States," ECF No. 24 at 4, but he offers up nothing to convert that speculation into reality.

[4] In at least one other case, the Federal Defender's Office in this District has taken the legal position that a "found in" violation of § 1326 requires the Government's actual knowledge of the reentrant's presence. *U.S. v. Dixon*, 327 F.3d 257, 259 (3d Cir. 2003).

3

card renewal process in 2004, he gave no indication that he had ever used an alias or that he was a previously deported alien, and that it was not then the practice of the federal authorities to do a fingerprint cross-check. She also stated that the federal immigration authorities had no knowledge of his unlawful presence in this country until he applied for naturalization in 2012. The Defendant proffered through Ms. Vernon a number of federal government policy statements, audit reports, Inspector General reports, Federal Register publications and similar materials (Defendant's Hearing Exhibits N, O, Q, S and U) for the proposition that as far back as the 1990's, the Government knew that its identity verification policies were porous, that persons were unwittingly being admitted to the United States unlawfully, and that the then-existing Government policies were not sufficiently strong or thorough to put a halt to that, and that more robust identity verification was therefore both necessary and achievable. Thus, according to the Defendant, he is being prosecuted at Count 3 outside of the bounds of the five-year statute of limitations, 18 U.S.C. § 3282(a), because the Government had chosen as a matter of policy to not be as diligent as it could be, at least until 2005.

The Government bears the obligation of demonstrating the timeliness of a prosecution once the limitations period has been fairly raised as a defense. *Smith v. U.S.*, 133 S. Ct. 714, 721 (2013). Both the Government and the Defendant appear to concede that if the Court does not conclude that the federal immigration authorities had actual or constructive knowledge of the Defendant's unlawful status flowing from his 2004 green card renewal process, the limitations period defense does not hold up. Thus, the question before the Court is whether the Government had actual knowledge of the Defendant's presence in this country as an illegal re-entrant before August 2008, or if not, whether it should nonetheless be charged with having had such knowledge constructively at that time.

Defendant relies heavily on the Third Circuit's decision in *U.S. v. DiSantillo*, 615 F.2d 128 (3d Cir. 1980). In that case, our Court of Appeals reversed a "found in" conviction under § 1326, and dismissed the indictment when the defendant, having once been deported, reentered the country from Italy through a designated port of entry using his own name and identity with a flawed visa, and thereafter the Government waited more than five (5) years to prosecute him. Judge Aldisert, writing for the Court of Appeals, noted that the defendant there had done nothing to conceal who he was, that the immigration authorities through the exercise of "typical diligence" could have discovered his identity and therefore his status, and the Government therefore had sufficient opportunities to discover his offense within the limitations period. If this were the last word on the subject from the Third Circuit, things might look better for the Defendant. However, it is not, and so they do not.

In 2004, the Third Circuit in *U.S. v. Lennon*, 372 F.3d 535 (3d Cir. 2004), considered this topic again in the context of a sentencing matter, and construed the phrase "found in" in § 1326 to mean when the Defendant is *actually* discovered in this country, and rejected the defendant's argument that given the "typical diligence" language of *DiSantillo*, the Government would be charged with that knowledge as of the date of an illegal reentry so long as it was through a recognized port of entry. The *Lennon* court read *DiSantillo* as holding that a "found in" violation of 8 U.S.C. § 1326 begins on the date the alien "comes to the attention" of the immigration authorities, and noted as being "central" to the *DiSantillo* holding the reality that DiSantillo came back into the country at a recognized point of entry as himself, was not "surreptitious" in doing so, and that the immigration authorities had sufficient notice of that single-identity, non-surreptitious reentry to trigger the running of the statute of limitations. It read *DiSantillo* as holding that illegal reentry begins when the alient presents himself "non-surreptitiously (i.e.

using his own name) at an open point of entry". *Id.* at 540; *see also U.S. v. Hernandez-Gonzalez*, 495 F.3d 55, 60 (3d Cir. 2007).

Defendant seizes on the fact that in 2004 when renewing his green card, he did use his own name (like Mr. DiSantillo, and unlike Ms. Lennon), and therefore he says that he comes within the *DiSantillo* rule, even as considered in *Lennon*. In doing so, he misses the point of the overarching principle of the *Lennon* and *DiSantillo* holdings — whether a defendant entered "non-surreptitiously." He also glosses over the key distinguishing fact of *DiSantillo* — that DiSantillo (unlike Ms. Lennon) used one name, his real name, at all times in his dealings with the immigration officials. He also ignores the application of the *DiSantillo* rule in *Lennon*. Ms. Lennon reentered using an alias, and was denied the benefit of the *DiSantillo* rule. In rejecting the application of the *DiSantillo* rule to the defendant in *Lennon*, then-Judge Chertoff noted that once Lennon had concealed her identity by using an alias, there would be no imputation of knowledge of unlawful presence onto the Government, for to do so would favor illegal entrants who affirmatively conceal their identity over those who use their own names.

In this Court's judgment, the legal doctrine established for this Circuit by our Court of Appeals dictates that when an illegal reentrant affirmatively uses multiple identities with the immigration officials (in Defendant's case, a phony one when deported and his real one when he sought to renew his green card) in the context of deportation and reentry, it makes no difference at which juncture he used his real name and when he used an alias. Here, Defendant was deported under an alias, and apparently reentered as himself, and then sought to renew his green card as himself. It makes no logical or legal difference that in doing so, he was using an order of identities opposite from the method used by Ms. Lennon to confound the immigration authorities. The result is the same — it is *his* use of multiple identities that created the identity

6

problem. *See U.S. v. Are*, 498 F.3d 460, 465 (7th Cir. 2007). The principle that is central to the holding in *Lennon*, and not at all inconsistent with that in *DiSantillo*, is straightforward — illegal reentrants who scramble the deck by using multiple identities with the immigration officials will not be permitted to benefit from that affirmative activity, including for limitations purposes.[5] *See U.S. v. Gordon*, 513 F.3d 659, 667-68 (7th Cir. 2008) (Ripple, J., concurring).

The Defendant argues, however, that since the federal authorities had at least some identifying information from his Texas conviction and federal deportation of 1997, and obtained more at his green card renewal application process in 2004, they had plenty of information from which they could have figured out his scheme to confuse the immigration officials by the use of an alias, and had they adopted and applied an identity cross-checking policy consistent with a recognition that the then-applicable verification policies were insufficient, they would have found the Defendant, and therefore "could have" found the Defendant for *DiSantillo* purposes.

While this argument in large measure turns on the "typical diligence" language of *DiSantillo*, it ignores *Lennon*. Whatever that standard might mean in the context of the facts of *DiSantillo*, i.e. when the defendant both leaves and reenters under his one true name, we do not believe that it can or should apply in this context present here for the reasons stated by then-Judge Chertoff in *Lennon* — that is, the defendant in a § 1326 "found in" case does not get to impose the "typical diligence" standard on the Government when he himself has taken affirmative steps to throw the immigration officials off of his trail by the intentional use of different identities. Thus, even if the Government could have done more with the information

---

[5] This is not a novel rule, and some (but not all) other courts of appeal apply it. *U.S. v. Uribe-Rios*, 558 F.3d 347 (4th Cir. 2009); *U.S. v. Gordon*, 513 F.3d 659, 664 (7th Cir. 2008) (statute of limitations not triggered when reentrant affirmatively misleads government); *U.S. v. DeLeon*, 444 F.3d 41, 52-53 (1st Cir. 2006); *see also U.S. v. Bencomo-Castillo*, 176 F.3d 1300, 1303-04 (10th Cir. 1999) (noting, but rejecting application of, constructive knowledge doctrine). *But see U.S. v. Gunera*, 479 F.3d 373, 375 (5th Cir. 2007) (applying constructive knowledge principles); *U.S. v. Rivera-Ventura*, 72 F.3d 277, 282 (2d Cir. 1995) (same); *U.S. v. Gomez*, 38 F.3d 1031, 1038 (8th Cir. 1994) (applying "discovery rule" to "found in" prosecution).

that it had on file about the Defendant albeit under his false name, it should not be charged with having been obligated to have done whatever it took to expose his multiple identities as a matter of law or policy when the need to do so is driven by the Defendant's own evasive conduct in concealing his identity.[6]

Apart from the fact that the Defendant's "the Government could have and should have done more" argument would place this Court in the position of dictating what the better (or best) enforcement policy decisions should have been years ago as to identity verification, the principle necessarily embodied in *Lennon's* application of *DiSantillo* is the correct one — when a defendant affirmatively acts to conceal his identity upon deportation or reentry, law enforcement will not be charged with constructive knowledge of his presence because they could have done more to discover his chicanery.[7]

Therefore, since the Government has made the necessary showing that it was not affirmatively aware of the Defendants unlawful reentry more than five (5) years prior to the date of the Indictment, and because the facts demonstrate that the Defendant was deported from this country under one name (a false one) and sought to come back and stay under another (his true

---

[6] The Court does not believe it is in a position to generally second-guess the resource allocation judgments made by the Legislative and Executive branches prior to 2005 as to when, how and for what purpose identity cross-checking should have occurred, nor does the record as established by the Defendant demonstrate that the Government was so blindly indifferent to the status of reentering aliens, or those renewing green cards, that it could be said to have abdicated any pretense of enforcing § 1326. After all, we cannot forget that Defendant took a number of steps, all premised on evasion, lies and/or intentionally incomplete factual disclosure, to steer the immigration officials away from discerning who he really was, and what he had done. He was quite successful in those efforts, until he sought to become a citizen in 2012. *DiSantillo* simply does not stand for the principle that his success in those endeavors generates a post-hoc obligation on the part of the Government to have devoted whatever resources were necessary in 2004 to ferret out who he was. The record adduced before this Court is simply insufficient for the Court to conclude that the pre-2005 policy judgments as to cross-checking identity was a "negligent failure to act" as opposed to simply being a failure to have done more. *Gomez*, 38 F.3d at 1037.

[7] Of course, those who engage in all sorts of criminal behavior do any number of things to avoid the detection of their crimes, and to evade law enforcement. That common-sense reality does not however help the Defendant. *DiSantillo* does not in effect convert the offense of being an illegal reentrant "found in the United States" to the crime of being an illegal entrant who "should have been found in the United States" in circumstances where the accused has affirmatively acted to conceal his identity, and *Lennon* says as much.

one), and thereby affirmatively concealed his identity relative to his immigration activities (along with denying being previously deported or using another name), the Motion to Dismiss Count 3 of the Indictment is denied.

An appropriate Order will enter.

Mark R. Hornak
United States District Judge

Dated: March 27, 2013

cc: All counsel of record